IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TREMAYNE G., | |
| Claimant, | |
| v. | No. 21 C 1541 |
| MARTIN O"MALLEY, | Magistrate Judge Jeffrey T. Gilbert |
| Commissioner of Social Security, | |
| Respondent. | |

**MEMORANDUM OPINION AND ORDER**

Tremayne G.[1] ("Claimant") seeks review of the final decision of Respondent Martin O'Malley,[2] Commissioner of Social Security ("Commissioner"), denying his application for supplemental security income under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 5]. This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c). Claimant filed a Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 15], and the Commissioner filed a Motion for Summary Judgment. [ECF No. 20]. For the reasons discussed below, Claimant's

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 15] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 20] is denied. This case is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

## PROCEDURAL HISTORY

On March 11, 2019, Claimant filed an application for supplemental security income, alleging a disability beginning January 1, 2013. (R.69). The claim was denied initially on July 3, 2019, and on reconsideration on December 6, 2019. (R.69). Claimant requested a hearing before an administrative law judge ("ALJ"). In light of the Covid-19 pandemic, ALJ Daivd Skidmore held a telephone hearing on August 19, 2020. (R.69). Claimant was represented counsel and testified telephonically. Pamela Nelligan, an impartial vocational expert, also testified telephonically at the hearing. (R.69). ALJ Skidmore issued an unfavorable decision on September 24, 2020, finding Claimant not disabled under section 1614(a)(3)(A) of the Social Security Act. (R.69-79).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ found Claimant had not engaged in substantial gainful activity since March 11, 2019, the date he filed his application. (R.71). At step two, the ALJ found Claimant had the following severe impairments: bipolar disorder, anxiety disorder, and post-traumatic stress disorder. (R.71).

At step three, the ALJ determined Claimant did not have any physical or mental impairment or combination of impairments that met or medically equaled the severity of any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). The ALJ concluded that the severity of Claimant's impairments, considered singly and in combination, did not meet or medically equal the criteria of any listing. (R.71-72). In his analysis, the ALJ considered Claimant's mental impairments and the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders, which are known as the "paragraph B" criteria. Specifically, the ALJ found Claimant had mild limitations in (1) understanding, remembering or applying information and (2) adapting or managing oneself and moderate limitations in (3) interacting with others and (4) concentrating, persisting, or maintaining pace. (R.72). With mild limitations in two areas of functioning and moderate limitations in the other two areas of functioning, the ALJ determined the paragraph B criteria were not satisfied. (R.72-73). The ALJ also considered whether the "paragraph C" criteria were satisfied and concluded the record evidence did not document the existence of any of the paragraph C criteria. (R.73).

The ALJ then found Claimant had the residual functional capacity ("RFC")[3] to perform "a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

3

short and simple work instructions; he is limited to routine work involving no more than occasional changes in the work setting; and he can engage in no more than brief and superficial interaction with the public, and no more than occasional interaction with coworkers and supervisors." (R.73). At step four, the ALJ found Claimant was not capable of performing his past work as a fast food cook. (R.78). At step five, relying on testimony from the vocational expert and considering Claimant's age, education, work experience, and RFC, the ALJ found there are jobs that exist in significant numbers in the national economy that Claimant can perform, including laundry worker, hand packager, and cleaner. (R.79).

For all these reasons, the ALJ concluded that Claimant has not been under a disability as defined in the Social Security Act since March 11, 2019, the date he filed his application for supplemental security income, through September 24, 2020, the date the ALJ's decision was issued. (R.79). Thereafter, Claimant filed this lawsuit seeking judicial review, and this Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 1383(c).

## STANDARD OF REVIEW

When a claimant files an application for supplemental security income, he bears the burden under the Social Security Act to bring forth evidence that shows his impairments are so severe they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *Bowen v. Yuckert*, 482 U.S. 137, 147-48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is

eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005); 20 C.F.R. § 416.920)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether an ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standard in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *Richardson v.*

5

*Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek*, 139 S. Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the ALJ's decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the ALJ's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

Claimant argues the ALJ's decision cannot stand because: (1) the ALJ relied on improper inferences and imaginary inconsistencies that undermined Claimant's statements; (2) the ALJ ignored regulatory factors and failed to articulate any logical support for his assessment of the medical opinion evidence, and (3) even if the RFC assessment is not flawed, the ALJ ignored testimony indicating that Claimant would be incapable of sustaining employment through the initial training period. The Court addresses the arguments below.

**A. The RFC Is Not Supported by Substantial Evidence**

Claimant's first two arguments essentially challenge the ALJ's RFC determination by arguing the ALJ improperly evaluated Claimant's subjective symptoms and complaints and the medical opinion evidence, and as a result of these errors, the RFC is not supported by substantial evidence. The Court agrees with Claimant that remand is required.

The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Madrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014), as amended (Aug. 20, 2014) (quotation omitted); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015); SSR 96-8p; 20 C.F.R. § 416.945(a).

At step two of the evaluation process, the ALJ found that Claimant had severe impairments, including bipolar disorder, anxiety disorder and post-traumatic stress disorder, which means that these impairments imposed significant limitations on Claimant's ability to function, but the ALJ then concluded his mental impairments did not meet or equal listing level severity. (R.71). As mentioned above, the ALJ found

7

that Claimant could perform "a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out short and simple work instructions; he is limited to routine work involving no more than occasional changes in the work setting; and he can engage in no more than brief and superficial interaction with the public, and no more than occasional interaction with coworkers and supervisors." (R.73). The RFC assessment also "must include a narrative discussion describing how the evidence supports the conclusion." SSR 96-8p. That discussion "must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Although the ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, he must build a logical bridge from the evidence to his conclusion. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

The ALJ began his analysis with Claimant's activities of daily living and concluded that his activities "have not been supportive of or consistent with the alleged symptoms or limitations." (R.75). Activities of daily living can provide valuable insight into a claimant's functional abilities, but an ALJ must be careful not to go too far and "equate the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation." *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014) (citing *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013);

8

*Carradine v. Barnhart*, 360 F.3d 751, 755–56 (7th Cir. 2004); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

Here, the ALJ relied upon the most basic activities of daily living to support the conclusion that Claimant engaged in "significant activity," including noting that Claimant did not report any problems with personal care or require any reminders for personal care or grooming. (R.75). The ALJ, however, explained that he did not equate these activities to be conclusive evidence of an ability to sustain the demands of full-time work activity, but then concluded "when viewed in combination with the objective evidence and the claimant's course of treatment, they demonstrate an ability to perform significant activity on a regular and continuing basis." (R.75). It is well-settled law, however, that mere boilerplate statements and conclusions cannot support an ALJ's decision, and an ALJ must set forth "specific reasons" for discounting subjective reports of symptoms. *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009) (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)); *Steele v. Barnhart,* 290 F.3d 936, 941-42 (7th Cir. 2002). The ALJ did not do so here.

The ALJ acknowledged Claimant's testimony that he does not cook or do laundry, but he does sweep and wash his dishes. (R.31). The ALJ noted that Claimant uses public transportation and goes shopping (R.75) but did not address Claimant's testimony that he has difficulty going into stores because of panic attacks. (R.32). The ALJ says that Claimant goes out "on a regular basis" but in his Function Report Claimant says he goes to the store only 2-3 times per month. (R.169). Claimant testified that he stayed in his room a lot and does not go out because "going out doesn't

9

feel comfortable." (R.27). The ALJ, however, seems to doubt Claimant's assertion that he does not spend time other others by pointing to the fact that he visited with his children. (R.75). This is not persuasive.

In the Court's view, the fact that Claimant spends time with his children does not contradict his claim that he does not interact much with other people. Nor is Claimant's ability to spend time with his children reflective of an ability to work full time. Claimant argues, and the Court agrees, the ALJ did, in fact, equate the most basic of life activities with an ability to sustain the demands of full-time work. In the Court's view, the ALJ did not adequately explain why he accepted some of Claimant's subjective symptoms and complaints but not others and which complaints were not supported by the medical evidence and why. Had the ALJ done so, the result on appeal may have been different.

The ALJ also appears to be confused about the nature of some of Claimant's symptoms. At one point in his decision, the ALJ stated that the nature of Claimant's reported activities "are internally inconsistent, and inconsistent with the allegations of severe pain and disabling symptoms made in connection with this application." (R75). The statement lacks clarity as the Court does not know which statements the ALJ thinks are internally inconsistent and what they are inconsistent with. In particular, the Court is confused by the ALJ's reference to "allegations of severe pain" as the Court cannot find any such complaints from Claimant. The ALJ also states that Claimant has a history of heroin addiction (R.75), but during his hearing testimony, Claimant denied using heroin (R.26). To be clear, Claimant does not deny

10

that he used drugs or that he participated in substance abuse program when he was incarcerated, but he does clearly testify that he did not use heroin. (R.25-26). These inconsistencies undercut the ALJ's analysis and conclusions and do not instill confidence the ALJ carefully considered the evidence in finding Claimant not disabled. Therefore, remand is required.

Claimant also argues that the ALJ selectively relied on limited medical evidence in the record and ignored other relevant evidence. The law is clear that an ALJ is not required to address every piece of evidence or testimony presented. *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) ("True, the ALJ's summary does not mention every detail. But it need not."). But it also is well-settled that an ALJ cannot cherry pick which evidence to evaluate and disregard other critical and relevant evidence. *Scrogham v. Colvin,* 765 F.3d 685, 696-99 (7th Cir. 2014). And although the ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, as discussed above, he must build a logical bridge from the evidence to his conclusion. *Minnick v. Colvin,* 775 F.3d 929, 935 (7th Cir. 2015).

Here, after discussing Claimant's activities of daily living, the ALJ then summarily stated that "[t]he objective medical evidence also does not document clinical findings of physical or mental status abnormality that establish total disability." (R.75). The ALJ then proceeded to summarize some of the medical evidence in the record. A general discussion of the medical record, however, does not satisfy an ALJ's obligation to explain how he arrived at his RFC finding and does not

11

build the required logical bridge from the evidence to that conclusion. *See Samuel v. Barnhart*, 316 F. Supp. 2d 768, 772 (E.D. Wis. Apr. 29, 2004) ("By failing to include in his narrative discussion a description of how the medical evidence supported his findings, the ALJ committed a clear error of law."); *see also Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (remanding the case after the ALJ failed to explain how she reached her conclusions about the claimant's physical capabilities in assessing her RFC).

After reciting some of Claimant's medical history and summarizing the medical opinions of record, the ALJ then concluded: "Considering the totality of the evidence including the improvement with medication and counseling, and the mental status exams that are often inconsistent with the claimant's allegation's, including being repeatedly negative for delusions and hallucinations, with exams noting at times normal attention span and concentration, inconsistencies between his report of social isolation and his activities, the allegations of memory issues despite exams noting judgment, memory and cognition within normal limits, I find that the mental impairments are sufficiently considered in the residual functional capacity assessed." (R.77). Although the ALJ claimed to have considered the totality of the evidence, saying so does not make it true. Again, mere boilerplate statements and conclusions cannot support an ALJ's decision; an ALJ must set forth "specific reasons" to support his conclusions. *Myles*, 582 F.3d at 676.

The Court agrees with Claimant that the ALJ did not present a complete description of the medical evidence in the record and that he may have cherry picked

12

records he deemed helpful to his conclusion and not addressed other evidence that supported some of Claimant's allegations. In particular, for example, there is some medical evidence in the record dated March 28, 2019, which is not discussed by the ALJ, that suggests Claimant needed further evaluation to more accurately assess his mental health and that Claimant would benefit from additional support and therapy to improve his daily functioning, community integration skills, and his ability to manage his symptoms. (R.379). The Court, however, is mindful of the deference that is owed to an ALJ's decision under the substantial evidence standard and that a reviewing court should not substitute its judgment for that of the ALJ's by reweighing the evidence.

Finally, the parties dispute whether the ALJ's analysis of the medical opinion evidence was appropriate. Again, the ALJ's discussion is largely conclusory. Even if the Court were to defer to the ALJ's analysis of the medical opinion evidence, however, this case still would be remanded for the other reasons discussed herein. Therefore, the Court does not need to address whether the ALJ's analysis of the medical opinion evidence was sufficient, and instead suggests that, on remand, the ALJ provide a more fulsome explanation about how the opinion evidence supports his ultimate determination.

**B. The ALJ Erred by Not Addressing Some of the Vocational Expert's Testimony**

Claimant next argues that even if the RFC assessment is not flawed, the ALJ ignored testimony offered by the vocational expert that is potentially in conflict with the ALJ's RFC finding. Specifically, the vocational expert testified that during the

13

training period, Claimant would have to sustain interaction with his supervisor on more than a minimal basis. (R.36-37). Claimant argues, and the Court agrees, that more than minimal interaction is in excess of what is allowed for in the RFC assessment and if Claimant were unable to sustain more than minimal interaction with a supervisor during his training period, he would not be able to sustain the available work. The ALJ did not address the vocational expert's testimony on this issue, and this potential conflict is problematic because an inability to successfully interact with a supervisor more than occasionally during a probationary and/or training period would be work preclusive.

The vocational expert's testimony also is not clear on the length of time during which increased interaction would be required. At one point in her testimony, the vocational expert said Claimant would have a probationary instructional period that usually would be between 60 to 90 days, but said later the training period would be during the first 30 days. (R.36-37). The Court is not clear whether Claimant would be required to have more than minimal interaction with his supervisor for up to 30 days or if it could extend to 60 to 90 days. In any event, the ALJ failed to address this testimony, and therefore, remand is required.

## CONCLUSION

For all of the reasons set forth above, Claimant's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 15] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 20] is denied. This case is

remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 21, 2024